SEMAAN v LIQUOR CONTROL COMMISSION

Docket No. 74857. Argued February 8, 1986 (Calendar No. 6). Decided May 20, 1986.

Gerald E. Semaan sought review in the Oakland Circuit Court of a decision by the Liquor Control Commission granting one available Specially Designated Distributor license in Commerce Township to John and Jane Waszchuk on the ground that they were prior in time to Semaan in filing an application for the license and that such priority took precedence over all other factors where the applicants were otherwise minimally qualified. The court, David F. Breck, J., remanded the case to the commission, stating that the commission must weigh each of the ten factors enumerated in 1979 AC, R 436.1105(2)(a)-(j) in evaluating an applicant's license qualifications and that the commission abused its discretion in finding that the original application of the Waszchuks was a qualified application. The Court of Appeals, M. J. KELLY, P.J., and BEASLEY and GRIBBS, JJ., reversed in an opinion per curiam, holding that the commission did not abuse its discretion in interpreting and applying its rules and that the trial court erred in considering material outside the record of the commission (Docket No. 72296). The plaintiff appeals.

In an opinion by Justice ARCHER, joined by Justices LEVIN, BRICKLEY, CAVANAGH, BOYLE, and RILEY, the Supreme Court held:

The Liquor Control Commission correctly evaluated the qualifications of the applicants before awarding the Specially Designated Distributor license. The commission's decision to use the order in which the applications for licenses were submitted as the sole criterion for awarding the license because all competing applicants were otherwise minimally qualified, complied with the requirements of the Liquor Control Act.

1. The Liquor Control Commission is vested with constitutional authority to exercise complete control of the alcoholic

REFERENCES

Am Jur 2d, Intoxicating Liquors §§ 114-202.
Liquor license as subject to execution or attachment. 40 ALR4th 927.

beverage traffic in Michigan, including the issuing of licenses and enacting rules and regulations subject to statutory authority. Rules promulgated by the commission set minimum standards for license applicants. Under the rules, the commission must exercise its discretion in determining the best qualified applicant in light of certain enumerated factors. However, the rules do not provide the weight to be given to each factor. The commission has interpreted the rule providing the criteria for license applicants to mean that once an applicant satisfies the proscribed minimum qualifications, the successful applicant is determined by the order in which initial applications were submitted.

2. In this case, the Liquor Control Commission determined that each of three applicants for the license met minimum requirements. Although the Waszchuks, at the time their application was filed, did not meet the requirement that an applicant be an established merchant, they did qualify at the time the license became available. The license was awarded to them because the date of their application was determined to be controlling as to priority.

3. The Court of Appeals erred in stating that the trial court considered material outside the record of the commission. The material in question was part of the record.

Chief Justice WILLIAMS, concurring, stated that the Liquor Control Commission's rules are unduly ambiguous, and only deference to administrative agency interpretation justifies acceptance of the interpretation in this case.

Affirmed.

136 Mich App 243; 355 NW2d 643 (1984) affirmed.

OPINION OF THE COURT

1. INTOXICATING LIQUORS — ADMINISTRATIVE LAW — SPECIALLY DESIGNATED DISTRIBUTOR LICENSES.

An award by the Liquor Control Commission of a Specially Designated Distributor license on the sole criterion of the order in which applications were submitted to it complied with statutory requirements where all competing applicants were otherwise minimally qualified (MCL 436.7; MSA 18.977, 1979 AC, R 436.1105[2][a]-[j]).

2. INTOXICATING LIQUORS — ADMINISTRATIVE LAW — SPECIALLY DESIGNATED DISTRIBUTOR LICENSES.

The Liquor Control Commission, in determining who among competing applicants for a Specially Designated Distributor license is best qualified, must exercise its discretion in light of

certain factors enumerated in applicable administrative rules; the rules, however, do not prescribe the weight to be given each factor (1979 AC, R 436.1105[2][a]-[j]).

3. INTOXICATING LIQUORS — ADMINISTRATIVE LAW — SPECIALLY DESIGNATED DISTRIBUTOR LICENSES.

The Liquor Control Commission, in determining who among competing applicants for a Specially Designated Distributor license is best qualified, has, consistent with the provisions of the Liquor Control Act, interpreted administrative rules prescribing minimum qualifications for applicants to make the order in which initial applications are submitted the sole criterion where all applicants are otherwise minimally qualified (MCL 436.7; MSA 18.977, 1979 AC, R 436.1105[2][a]-[j]).

4. INTOXICATING LIQUORS — ADMINISTRATIVE LAW — SPECIALLY DESIGNATED DISTRIBUTOR LICENSES — ESTABLISHED MERCHANTS.

An applicant for a Specially Designated Distributor license need not be an established merchant at the time application for the license is made in order to fulfill that minimum requirement; rather, the applicant must be an established merchant at the time the license becomes available (1979 AC, R 436.1101[1][a]).

*Rothstein, Erlich & Rothstein (by Stewart I. Erlich, Lawrence R. Rothstein, and Jay L. Rothstein) for the plaintiff.*

*Frank J. Kelley, Attorney General, Louis J. Caruso, Solicitor General, and Frank J. Pipp and Richard I. Rubin, Assistant Attorneys General, for the defendant.*

ARCHER, J. The plaintiff, Gerald Edward Semaan, challenged the Liquor Control Commission's award of a Specially Designated Distributor[1] license to John and Jane Waszchuk. The Waszchuks applied for the SDD license first, but Semaan argued that when the Waszchuks applied they were not qualified for the license according to the commission's own rules.

Following Semaan's appeal in the Oakland Cir-

---

[1] SDD licenses permit the holder to sell packaged liquor (but not beer and wine) for takeout only.

cuit Court, the trial judge remanded the case to the commission, stating that the commission must weigh each of the ten factors discussed below in evaluating an applicant's license qualifications. The trial judge also found that the commission abused its discretion in finding that the first application of the Waszchuks was a qualified application.

The Court of Appeals reversed the trial court, holding that the commission did not abuse its discretion in interpreting and applying its rules. The Court also found that the trial court erroneously went outside the record in considering a letter which purportedly showed that the Waszchuks were not considered qualified by the commission when they filed their initial application. In the hearing before the commission, the plaintiff did not present the letter or a claim based upon the letter.

There are two issues in this case.

### ISSUE I

Whether the Court of Appeals erred in upholding the LCC's ruling that pursuant to 1979 AC, R 436.1105(2), the sole criterion for awarding a liquor license, where all the competing applicants were minimally qualified, was the order in which the applications were submitted to the commission.

### ISSUE II

Whether the Court of Appeals erred in finding that the trial court went outside the record for its decision. Whether the Court of Appeals erred in reversing the order of the trial court.

We hold that the Liquor Control Commission correctly evaluated the qualifications of the appli-

cants by using the ten factors listed in 1979 AC, R 436.1105(2)(a)-(j) before awarding the SDD license.

We also hold that an applicant must be an established merchant at the time an SDD license becomes available.

FACTS

Plaintiff Gerald Edward Semaan and defendants Jane and John Waszchuk applied to defendant commission for SDD licenses for their businesses in Oakland County's Commerce Township. The Waszchuks applied on June 9, 1980, and Semaan applied October 10, 1980. The commission notified the Waszchuks and Semaan that no licenses were available.[2] In a separate letter, the commission informed the Waszchuks that they did "not appear to fall within the definition of an established merchant" so the commission would take no further action on their application.[3]

In 1981, the commission reviewed the data of the 1980 Decennial Census and determined that Commerce Township qualified for one additional SDD license because of a population increase. The applicants were notified and renewed their applications, with Semaan reapplying on August 7, 1981, and the Waszchuks reapplying on September 11, 1981. Six other applicants also sought the license. The commission, at a meeting on March 24, 1982, considered the applications and stated its intent to grant the SDD license to the Waszchuks.[4]

[2] 1979 AC, R 436.1141(1) provides in part: "In cities, incorporated villages, or townships, only 1 specially designated distributor license shall be issued by the commission for every 3,000 population, or fraction thereof." At the time of the applications, there were six SDD licenses issued which filled the quota.

[3] See *post*, pp 36-37 and n 9.

[4] The commission found that the Waszchuks filed an application for a new SDD license June 9, 1980, although their application was dated

Semaan and another unsuccessful applicant requested a hearing. The commission, after reviewing the facts and the law, issued an order affirming its earlier decision. Semaan sought review in the circuit court. On May 13, 1983, the circuit court reversed the commission, ruling that the commission erred in failing to weigh each factor (of the ten factors in the commission's rule) to determine if one applicant was more qualified than another. The circuit court remanded the case to the commission for further hearing. The commission appealed the decision in the Court of Appeals.

The Court of Appeals reversed the trial court's decision. The Court found no abuse of discretion in the commission's interpretation and method of applying its rules. See *Semaan v Liquor Control Comm,* 136 Mich App 243; 355 NW2d 643 (1984). We granted leave on June 26, 1985. 422 Mich 938. Upon review, we agree with the Court of Appeals which approved the commission's interpretation of its own licensing rules and the award of the SDD license to the Waszchuks. But we find that the Court of Appeals erred when it stated that the trial court went outside the record in considering a letter from the commission indicating that the Waszchuks were not established merchants when they filed their application. The letter was part of the record.

### DISCUSSION

Plaintiff argues that the commission's record in this case is inadequate to provide for judicial

June 3, 1980. The commission stated it intended to issue the license to Jane Waszchuk and John Waszchuk who is [sic] second in priority in filing. Another couple filed for a new SDD license originally on January 16, 1978, but at that time they did not have priority of filing. When they reapplied, they did not meet other licensing requirements.

review. We disagree. We find that the record is adequate to review the commission's decision.

The commission is vested with constitutional authority to "exercise complete control of the alcoholic beverage traffic within this state."[5] When the Legislature established the Liquor Control Commission, the commission's power was broadly stated: "[T]he commission shall have the sole right, power, and duty to control the alcoholic beverage traffic and traffic in other alcoholic liquor within this state, including the manufacture, importation, possession, transportation and sale thereof."[6]

Among the powers delegated to the commission were issuing licenses, selecting distributors, and enacting rules. The commission has the authority to "issue licenses, as provided in this act . . . ." MCL 436.17(1); MSA 18.988(1). As to distributors, the "commission may license any hotel or established merchant . . . in places that the commission may designate, to sell alcoholic liquor . . . for consumption off the premises." MCL 436.14; MSA 18.985. Regarding rulemaking, "the commission shall exclusively exercise the power to make rules and regulations under the act to regulate the control of the alcoholic beverage traffic within the state . . . ."[7]

Because of the constitutional power granted to it, the commission is said to have plenary power over the liquor traffic in the state. *Terre Haute Brewing Co, Inc v Liquor Control Comm,* 291 Mich 73; 288 NW 339 (1939). The word "control," as

---

[5] The constitutional provision reads in part:

[T]he legislature may by law establish a liquor control commission which, subject to statutory limitations, shall exercise complete control of the alcoholic beverage traffic within this state, including the retail sales thereof. [Const 1963, art 4, § 40.]

[6] MCL 436.1(2); MSA 18.971(2).

[7] MCL 436.5(b); MSA 18.975(2).

used in the constitution, means to regulate and govern. *Noey v City of Saginaw,* 271 Mich 595; 261 NW 88 (1935). While the commission has plenary power, this power is not absolute. The constitution expressly provides that the LCC's power is "subject to statutory limitations."[8] While every vestige of regulation is within the purview of the commission's authority, the same cannot be said of the agency's procedures for implementing that authority. *Mallchok v Liquor Control Comm,* 72 Mich App 341, 344; 249 NW2d 415 (1976).

By statute, the commission may license any hotel or established merchant to sell alcoholic liquor for consumption off the premises. The statute provides that such a distributor, if a natural person, shall be a citizen of this state and, if a corporation, shall be organized under the laws of the state. MCL 436.14; MSA 18.985.

The commission, acting upon the authority granted to it by MCL 436.7; MSA 18.977, enacted the following rules: 1979 AC, R 436.1105(2)(a)-(j), stating the factors the commission shall consider in determining whether an applicant may be issued a license, and 1979 AC, R 436.1101(1)(a), defining an "established merchant."

In 1979 AC, R 436.1105(2) the criteria for an applicant are as follows:

> (2) The commission shall consider the following factors in determining whether an applicant may be issued a license:
> (a) The applicant's management experience in the alcoholic liquor business.
> (b) The applicant's general management experience.
> (c) The applicant's general business reputation.

---

[8] Const 1963, art 4, § 40. See *Zukaitis v Fitzgerald,* 18 F Supp 1000 (WD Mich, 1936).

(d) The opinions of the local residents, local legislative body, or local law enforcement agency with regard to the proposed business.

(e) The applicant's moral character.

(f) The order in which the competing initial application forms are submitted to the commission.

(g) Past criminal convictions of the applicant for crimes involving moral turpitude, violence, or alcoholic liquor.

(h) The applicant's excessive use of alcoholic liquor.

(i) The effects that the issuance of a license would have on the economic development of the area.

(j) The effects that the issuance of a license would have on the health, welfare, and safety of the general public.

In addition, the commission defined an established merchant in its own rules:

"Established merchant" means a person who owns or who has owned a drugstore, patent medicine store, supermarket, grocery store, delicatessen store, party store, meat market, or a department store which includes 1 or more of the aforementioned businesses, and who has owned that business for 1 year at some location. [1979 AC, R 436.1101(1)(a).] [9]

When the Waszchuks first applied for the SDD license, in June, 1980, the commission sent them a letter stating that they did "not appear to fall within the definition of an established merchant." Plaintiff argues that the statute requires that an applicant for an SDD license must be an established merchant and that the commission's letter was a

[9] The rule was rescinded. 1979 ACS 4, p 97. Effective February 3, 1981.

final determination that the Waszchuks were not qualified to apply for the license. Plaintiff argues that the Waszchuks' failure to appeal the commission's decision precluded them from using their June, 1980, application as the date of their initial application.

The defendant commission argues that such advisory letters are routinely issued to all applicants, including Semaan. The commission maintains that there was no hearing on the Waszchuks' status as established merchants and that the letter did not have the effect of an order issued by the commission. Furthermore, the commission contends that the priority of filing is determined from the order in which "the initial application forms are submitted to the commission."

However broad the commission's grant of power, the courts have held that "[w]here an agency issues rules and regulations to govern its activity, it may not violate them." *Golembiowski v Madison Heights Civil Service Comm,* 93 Mich App 137, 148; 286 NW2d 69 (1979), lv den 408 Mich 893 (1980). See also *Brown v Dep't of State Police,* 392 Mich 811 (1974), and *DeBeaussaert v Shelby Twp,* 122 Mich App 128; 333 NW2d 22 (1982).

The commission has interpreted 1979 AC, R 436.1105(2)(a)-(j) to mean that once applicants satisfy the rule's minimum qualifications, the successful applicant is determined by the order in which an initial application is submitted to the commission. The priority of filing is to be determined from the order in which the "competing initial application forms are submitted to the commission" and not some subsequent application.

The commission determined at its June 17, 1982, meeting that the three competing applicants for the SDD license already met the minimum require-

ments for that license since each of the applicants held Specially Designated Merchant licenses.[10]

The commission considers the merchant's application date appropriate to control priority, and an applicant satisfies the requirement of being an established merchant if this requirement is complied with when the SDD license becomes available. The applicant need not qualify as an established merchant at the time that the application is filed.

Since there is no explicit requirement that an applicant must be an established merchant at the time he initially applies for the license, we decline to read such a requirement into the statute and rule.[11]

We agree with the commission. The SDD licensing statute, MCL 436.14; MSA 18.985, states that an applicant must be an established merchant in order to be awarded an SDD license. By rule, 1979 AC, R 436.1101(1)(a), the commission defines an established merchant as one who owns a specific type of business for one year at some location.

In this case, the Waszchuks were notified shortly after they applied for an SDD license that they were not established merchants. However, the Waszchuks met that requirement by the time the SDD license became available.

---

[10] A "Specially Designated Merchant" license authorizes a merchant to sell beer and wine at retail for takeout only. MCL 436.2q; MSA 18.972(17). An SDM (beer and wine) license is a prerequisite to an SDD license application.

[11] In *Magreta v Ambassador Steel Co,* 380 Mich 513, 519; 158 NW2d 473 (1968), we quoted with approval the following language of the United States Supreme Court in *United States v Moore,* 95 US 760, 763; 24 L Ed 588 (1877):

The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons.

See also *Sisbarro v City of Fenton,* 90 Mich App 675; 282 NW2d 443 (1979).

The plaintiff additionally argues that in its decision of March 24, 1982, the commission awarded the SDD license to the Waszchuks and denied the license to the plaintiff on the sole basis that the plaintiff allegedly did not have priority of filing pursuant to 1979 AC, R 436.1105(2)(f). The plaintiff contends that in the same decision the LCC held that "while the priority of filing factor in R 436.1105, Rule 5(2)(f), MAC is useful in separating applicants who may be otherwise equally qualified, priority of filing is not the sole determinant in the issuance of a limited type of quota license." The plaintiff maintains that the commission did not make *any* findings of fact with regard to the other nine criteria, other than to find that the three remaining applicants were all minimally qualified.

The defendant commission explained its application of the rule and the procedures which it follows where the number of applicants exceeds the number of licenses available.

At the meeting of June 17, 1982, the commission explained:

> Essentially this procedure is a process of elimination whereby the Commission first removes from consideration those applicants who do not meet statutory requirements for licensure or who do not comply with the provisions of the Commission's Administrative Rules. In most cases, the Commission then eliminates those applicants within 2,640 feet of an existing SDD outlet. At this point, barring the existence of some other negative factor, the Commission considers the priority of application dates of the remaining applicants, and grants the available licenses in the same order in which the applicants applied, pursuant to R 436.1105, Rule 5(2)(f), MAC.

* * *

The factors enumerated in the rule were promulgated by the Commission for the purpose of setting minimum standards for all applicants for licensure, and the Commission has traditionally operated on the premise that once an applicant has met these minimum standards that applicant is equal to all other applicants who have done likewise.

The defendant commission argues that the validity of its decision in choosing among competing applicants for a single license does not require giving any one factor, stated in 1979 AC, R 436.1105(2), any more weight than any other factor.

The defendant commission contends that the application of an objective standard as expressed in subsection (2)(f), such as the first in time of applications where all of the factors pass threshold requirements, is not only appropriate in liquor licensing situations involving competing applicants, it is indeed far superior to the application of subjective criteria on a comparative basis for the purpose of judging the most qualified applicant, especially when neither the statute nor the rules require such judgment.

Moreover, the commission argues that to require it to make findings on a comparative basis under all other criteria in preference to provision (2)(f) of the rule would be contrary to the express language in (2)(f) and thus would render it nugatory.

The constitution provides for judicial review of final decisions of administrative agencies. Const 1963, art 6, § 28.[12] The courts have stated: "Review

---

[12] The constitutional provision states in pertinent part as follows:

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private

. . . is limited in scope to 'whether such final decisions, findings, rulings and orders are authorized by law . . . .' " *13-Southfield Associates v Dep't of Public Health,* 82 Mich App 678, 686; 267 NW2d 483 (1978), citing *Viculin v Dep't of Civil Service,* 386 Mich 375, 392; 192 NW2d 449 (1971).

The commission is required to follow the clear language of its own rule. *Brown v Dep't of State Police, supra.* The rule requires that the commission shall consider the ten factors listed in determining whether an applicant may be issued a license.

Applying these principles to this case, we find that the word "shall" used in 1979 AC, R 436.1105(2)(a)-(j) requires the commission to evaluate the qualifications of the applicant using each of the ten factors. While the rule requires the commission to exercise its discretion to determine who is best qualified for a liquor license, the rule does not state the weight which the commission is required to apply to each factor. We find that the method used by the commission complies with the statutory requirements.

Therefore, we affirm the decision of the Court of Appeals.

LEVIN, BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with ARCHER, J.

rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. Findings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law.

In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation.

WILLIAMS, C.J. (*concurring*). While I concur in the result and the general analysis of Justice ARCHER's opinion, I find that the Liquor Control Commission's rules are unduly ambiguous, and only deference to administrative agency interpretation justifies accepting that interpretation in this case.